UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
ALLAN THORNTON, CARDELL ALSTON,
and LESLIE LEWIS,

                Plaintiffs,                                 **COMPLAINT**

        -against-

CITY OF NEW YORK, JEFFREY GORIS,
EDWERD OLIVE, RUBEN NATANOV, and
JOHN and JANE DOES 1-6

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Plaintiffs Allan Thornton, Cardell Alston, and Leslie Lewis, by their attorney, Michael Lumer, hereby allege upon information and belief:

## PARTIES, VENUE and JURISDICTION

        1.      Plaintiffs Allan Thornton, Cardell Alston, and Leslie Lewis (collectively, "plaintiffs") were at all relevant times herein adult residents of the State of New York.

        2.      At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

        3.      At all relevant times hereinafter mentioned, defendant Jeffrey Goris (Tax number 954887), was employed by the City of New York as a member of the NYPD. Defendant Goris is sued herein in his official and individual capacities.

        4.      At all relevant times hereinafter mentioned, defendant Edwerd Olive (Shield 442), was employed by the City of New York as a member of the City's Sheriff's Office.

Defendant Olive is sued herein in his official and individual capacities.

5. At all relevant times hereinafter mentioned, defendant Ruben Natanov was the owner of real property in Brooklyn, New York, including a parcel with the address 285 Junius Street, with the respective block and lot numbers 037464 and 0022, and is believed to reside within the Eastern District of New York.

6. At all relevant times hereinafter mentioned, defendants John and Jane Doe 1-6 (collectively the "Doe defendants") are members of the NYPD and/or the Sheriff's Office, whose individual identities are not presently known to plaintiffs. The Doe defendants are sued herein in their official and individual capacities.

7. At all relevant times hereinafter mentioned, defendants Goris and Olive, as well as the Doe defendants, were on duty and acting under color of law and within the scope of their employment by the municipal defendant in furtherance of the City of New York's interests and without legal justification or excuse.

8. Defendants Goris, Olive, and the Doe defendants are referred to collectively herein as the "LEO defendants."

9. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983, and supplemental jurisdiction over the New York City Administrative Code and state law claims pursuant to 28 U.S.C. § 1967.

10. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiffs and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

## RELEVANT FACTS

### The Premises at 285 Junius Street

11. As of March 1, 2020, defendant Natanov was the owner of an industrial building located at 289 Junius Street, Brooklyn, New York (the "Junius Building").

12. The Junius Building contained several businesses or commercial spaces that occupied different units within the Junius Building that the address 285 Junius Street.

13. On March 1, 2020, plaintiffs Thornton and Alston entered into a written with defendant Natanov for units within the Junius Building that had the address of 285 Junius Street (the "Premises"), effective as of that same day.

14. The lease provided that, in the event of litigation, the prevailing party would be entitled to legal fees and court costs.

15. The Premises consisted primarily of two spaces. One was directly accessible through a doorway that was numbered "285" ("Space 1"). The other was an adjacent space that had a doorway on the left side of the building ("Space 2").

16. Under the terms of the lease, which was titled a "Month-to-Month Rental Agreement," both the landlord (Natanov) and the tenants (Thornton and Alston) had the right to terminate the lease but could only do so on 90 days written notice. Natanov could also modify the terms of the lease, but that too required 90 days written notice.

17. Thornton and Alston remained tenants at 285 Junius from March 1,2020, until continuously from March 1, 2020, until on or about September 5, 2024.

18. At no time prior to September 5, 2024, did any of the parties to the lease give notice of their intention to terminate or modify the lease.

19. At no time prior to September 5, 2024, did Natanov commence any legal proceedings to recover rent or to terminate the lease or otherwise alter Thornton and Alston's rights under the lease or access to the Premises.

### The March 2021 Arrest

20. On or about March 20 or 30, 2021, Thornton and Alston hosted a party in Space 2. Space 1 was, at that time, being used for storage purposes.

21. During the course of the party dozens of NYPD officers arrived at the Premises, soon accompanied by NYPD ESU officers and an NYPD Aviation unit flying overheard. The defendants were unable to specify how many officers responded to the Premises, but during subsequent litigation the City produced 87 body-worn camera ("BWC") files from more than 50 different officers.

22. Approximately 24 people were arrested. All but two of the people arrested were held for a few hours before being given criminal summonses charging them with trespassing, notwithstanding the presence of Thornton and Alston, who had a written lease for the Premises.

23. Thornton was one of the individuals who received a summons. Leslie Lewis was not one of the people arrested on that date.

24. Two of the individuals arrested allegedly had open bench warrants and so these two individuals, including Cardell Alston, were brought to criminal court on the open warrants. The ancient summons and the immediate arrest charges were both dismissed.

25. There was no allegation by the officers that any narcotics, drugs, or weapons were recovered in the Premises or on the guests.

26. All of the charges against every person arrested that night were dismissed shortly thereafter.

27. Twenty-one of the people arrested hired Michael Lumer, Esq., to pursue a civil rights action, which was filed in this Court as Alston, et al., v. City of New York, et al., 22-CV-3665 (ENV) (RML).

28. The case was later resolved with the City paying the 21 plaintiffs $250,000, and paying plaintiffs' counsel another $155,000 for legal fees and costs. Neither plaintiff Leslie Lewis nor defendants Goris and Olive were parties to the first case.

29. At no time following the March 2021 arrests, but prior to September 2024, did Natanov commence any legal proceedings or take any action to recover rent or to terminate the lease or otherwise alter Thornton and Alston's rights under the lease or access to the Premises.

### The September 5, 2024, Arrest

30. On or about August 27, 2024, defendant Goris obtained a search warrant (SW 285/24) from the Hon. Michael D. Kitsis that permitted the NYPD to enter 285 Junius Street at any time to search for evidence related to illegal gambling, including, but not limited to, bank account records, ledgers, and other such materials. The warrant did not identify any individual target or subject.

31. Goris presented testimony and an affidavit in support of his application for the search warrant.

32. The search warrant was for the entirety of 285 Junius Street, without limitation.

33. Upon information and belief, Goris relied on information provided by Natanov in his application for the warrant, and/or was otherwise provided access to the Premises by Natanov without the plaintiffs' knowledge or consent when the Premises were otherwise empty.

34. During the late afternoon hours of September 5, 2024, the plaintiffs were lawfully present at the Premises for the purpose of meeting with plaintiff Leslie Lewis.

35. Thornton and Alston had renovated Space 2 and were continuing to use it as an event space where they could host parties and social gatherings, or rent it to others who would host the event.

36. Thornton and Alston also planned on establishing a licensed smoke shop in Space 1 and had renovated Space 1 accordingly.

37. Leslie Lewis works as a general contractor and had performed various jobs for Thornton and Alston in the Premises.

38. As the plaintiffs were exiting Space 2 (the event space), they were seized by members of the NYPD.

39. The plaintiffs' arrest occurred at or about 6:00 PM on September 5, 2024.

40. No individuals, other than the plaintiffs and the defendants, were in the Premises at that time, nor were the units open to the public.

41. As the three plaintiffs were exiting the event space through a side door they were seized, arrested, and handcuffed by Goris and the Doe defendants and taken into custody.

42. At no time did probable cause exist for the arrest of any of the plaintiffs,

nor was there any basis to reasonably believe that probable cause to arrest existed.

43. All three plaintiffs were subsequently transported to a local area station house, where their arrests were processed. They were then taken to Kings County Central Booking, where they were jailed for many more hours.

44. While the plaintiffs were in defendants' custody, Goris drafted arrest paperwork concerning the arrests, or otherwise caused it to be drafted. In this paperwork, the defendants falsely claimed that all three criminally possessed a weapon and ammunition, and that Alston also allegedly unlawfully possessed gambling paraphernalia.

45. These claims by the defendant were materially false as none of the defendants had actual or constructive possession of a gun or ammunition, nor was there any basis to allege that Alston criminally possessed any gambling paraphernalia Goris may have found in Space 2.

46. The defendants then forwarded, or caused to be forwarded, these false statements of fact, to the Kings County District Attorney ("KCDA") to justify the arrests and to persuade the KCDA to commence the plaintiffs' criminal prosecutions.

47. The defendant(s) knew and understood that the KCDA was relying on the defendants to provide accurate and truthful information, and not to omit evidence or facts that may be favorable to those persons under arrest, or otherwise withhold information or mislead the KCDA in any way with respect to the facts and circumstances surrounding the arrest of the plaintiffs.

48. As a result of defendants' communications to the KCDA, all three plaintiffs were arraigned on September 6, 2024, for the felony possession of a gun pursuant to

NY Penal Law §§ 265.03(03) and 265.01-B(01), as well as misdemeanor weapon possession under NY Penal Law § 265.01(01) and criminal possession of pistol ammunition under NY AC 10-131(I-13).

49. Cardell Alston was also charged with felony possession of a gun pursuant to NY Penal Law § 265.02(01), and misdemeanor charges NY Penal Law §§ 225.05 and 225.30, which are for promoting gambling and the possession of a gambling device.

50. The plaintiffs were required to return to court as the prosecution continued.

51. The KCDA moved for an order to compel plaintiff Alston to provide a DNA sample for comparison by the Office of the Chief Medical Examiner with DNA purportedly found on the gun alleged recovered at the scene. No such motion was made with respect to either Thornton or Lewis.

52. On December 16, 2024, the Hon. H. Jacob Moses denied the motion, finding that the KCDA had not alleged, much less demonstrated, that there was probable cause that Cardell Alston had committed the charged crimes.

53. On February 27, 2025, the KCDA moved orally to dismiss all of the charges against all three plaintiffs. All three prosecutions were dismissed and sealed that day.

54. In their motions to dismiss these prosecutions, the KCDA stated in open court that a review of the case led to the conclusion that there was no evidence that the defendants actually or constructively possessed the weapon, and that there was legally insufficient evidence to proceed.

### The Seizure of the Premises and Plaintiffs' Property and Defendant Natanov's Involvement in the Arrests

55. On or about the evening of September 6, 2024 Thornton returned to the Premises only to find that the locks had been changed and Premises shuttered.

56. He was informed that defendant Natanov was responsible for these changes and that he and Alston were no longer permitted access to the Premises.

57. Notwithstanding the above, Thornton was briefly permitted access to the Premises by another tenant who rented or utilized other units at the Junius Street building.

58. Thornton observed that a substantial amount of plaintiffs' property in Space 1 and Space 2 was missing, including a refrigerator, electronics, and other items.

59. Thornton further saw that Natanov had filled both spaces with furniture, as though the Spaces' primary purpose was to warehouse furniture.

60. By removing the Thornton and Alston's property, changing the door locks and shuttering the entrances to the Premises, and moving in his, or another tenant's property into the Premises, Natanov had evicted them from the Premises without notice or cause in violation of the parties' lease.

61. By evicting them without notice and seizing and retaining their property, Natanov effectively closed Thornton and Alston's businesses and caused them to suffer economic damages, which are continuing to date.

62. They were denied access to the Premises and were unable to retrieve the property in both Space 1 and Space 2.

63. That the eviction of Thornton and Alston and the seizure of their property was nearly simultaneous with the LEOs' arrival at the Premises and the arrest of the

plaintiffs is compelling evidence that Natanov can only be understood as evidence of Natanov's participation in Goris' application for and procurement of the search warrant.

## FIRST CAUSE OF ACTION

(Section 1983 Claim by all Plaintiffs for
False Arrest by the LEO Defendants)

64. Plaintiffs repeat the preceding allegations as though stated fully herein.

65. The LEO defendants willfully and intentionally seized, searched, detained, and arrested the plaintiffs without probable cause, and without a reasonable basis to believe such cause existed.

66. To the extent that any one of the LEO defendants did not directly or personally participate in or supervise the arrest of any of the plaintiffs, each said LEO defendant was aware that the plaintiffs were being seized and otherwise arrested without lawful cause at the time of the arrest, yet took no steps to intervene in the seizure in any way or to limit the continuing seizure and detention of these three plaintiffs in handcuffs outside of the premises.

67. By reason thereof, the LEO defendants have violated 42 U.S.C. §1983 and caused the plaintiffs to suffer emotional and physical injuries, mental anguish, economic damages, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

(Section 1983 Claim by all Plaintiffs for
Denial of a Fair Trial by the LEO Defendants)

68. Plaintiffs repeat the preceding allegations as though stated fully herein.

69. The LEO defendants, by fabricating evidence in the form of materially false statements to prosecutors, caused the three plaintiffs to be criminally prosecuted for the

possession of a gun and ammunition, and further caused plaintiff Alston to be charged with various gambling offenses.

70. Goris and Olive both communicated to prosecutors, or stated to otherws with the understanding that their false claims would be communicated to prosecutors, that they observed all three plaintiffs in possession of a loaded handgun.

71. These allegations were false as none of the plaintiffs had any knowledge that the gun was present in the Premises, if it ever really was, and none ever actually or constructively possessed the handgun and ammunition.

72. These allegations were material, as the question of whether any of the plaintiffs actually or constructively possessed the gun was the core issue to be decided.

73. Goris falsely conflated the event space with smoke shop–an error that could only be understood as deliberate--falsely communicating to the prosecution that the plaintiffs a single unit at the Premises, when they occupied two separate spaces in a building with other tenants and units, and then relied on that misstatement to argue that the plaintiffs were inside the smoke shop (Space 1) when the police entered, when, in fact, the plaintiffs were in the event space (Space 2) when the officers arrived, and were in the process of exiting the building altogether when they were seized.

74. To the extent that any one of the LEO defendants did not directly or personally participate in or supervise the communication of fabricated evidence to prosecutors, ea said defendant was aware that the plaintiffs were being seized and otherwise arrested without lawful cause at the time of the arrest, yet took no steps to intervene in the seizure in any way or to limit the continuing seizure and detention of these three plaintiffs in handcuffs outside of the

premises.

75. By reason thereof, the LEO defendants have violated 42 U.S.C. §1983 and caused the plaintiffs to suffer emotional and physical injuries, mental anguish, economic damages, the deprivation of liberty, and the loss of their constitutional rights.

**THIRD CAUSE OF ACTION**

(Section 1983 Claim by all Plaintiffs
for Malicious Prosecution by the LEO Defendants)

76. Plaintiffs repeat the preceding allegations as though stated fully herein.

77. The LEO defendants intentionally initiated or caused the plaintiffs' criminal prosecutions to be initiated, without probable cause for said prosecutions.

78. The LEO defendants' conduct was malicious in that the defendants knew they lacked probable cause and pursued the initiation and continuation of the plaintiffs' prosecutions without a legitimate or lawful purpose.

79. The plaintiffs suffered a loss of liberty as a result of these prosecutions, which were ultimately terminated in the plaintiffs' favor.

80. By so doing, the individual defendants, individually and collectively, caused the plaintiffs to maliciously prosecuted and thereby violated and aided and abetted in the violation of the plaintiffs' rights under the Fourth Amendment of the United States Constitution.

81. To the extent that any of the individual defendants did not personally participate in the fabrication of evidence or communications about said evidence with the KCDA, these individual defendants were aware that the arrests were made and were made without probable cause, and were equally aware that at least some of their fellow officers were

fabricating evidence or communicating materially false or misleading information to the KCDA, and, despite ample opportunity to do so, failed to intervene in the unconstitutional conduct of their fellow officers, and so facilitated and encouraged the continuation of the misconduct.

82. By so doing, the individual defendants, individually and collectively, caused the plaintiffs to be maliciously prosecuted, and thereby violated and aided and abetted in the violation of the plaintiffs' rights under the Fourth Amendment of the United States Constitution.

83. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused the plaintiffs to suffer emotional and physical injuries, mental anguish, economic damages, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## FOURTH CAUSE OF ACTION

(Section 1983 Unlawful Seizure of Property Claim
by Plaintiffs Thornton and Alston by the LEO Defendants)

84. Plaintiffs repeat the preceding allegations as though stated fully herein.

85. The plaintiffs learned, no later than September 6, 2024, one day after the arrest, that the locks to the Premises had been changed.

86. The plaintiffs further learned that same day that their possessions had been removed from the Premises.

87. No information was ever provided to the plaintiffs as to who had removed these possessions or where they had been removed to.

88. These possessions included, but are not limited, electronics and a refrigerator, counters and cabinets, and other, similar items.

13

89. Upon information and belief, these items were seized, or caused to be seized, by defendant Goris or his colleagues at the NYPD, or by defendant Olive or his colleagues at the Sheriff's office.

90. No vouchers were ever provided, no notice before or after the seizure was ever given, and plaintiffs were never advised as to identity of the party that had taken their property.

91. At no point did the KCDA ever advise either plaintiff of any such seizure, nor were they given notice of any forfeiture proceedings or actions.

92. By so doing, the LEO defendants effectively seized and asserted ownership over plaintiffs' property without their consent or knowledge, and without any substantive or procedural due process, thereby depriving them of their property without any legal basis or justification from September 5, 2024, to date in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and thus causing them to suffer pecuniary and emotional injuries.

## FIFTH CAUSE OF ACTION

(State Law Claim by Plaintiffs Thornton and Alston
for Breach of Contract by Defendant Natanov)

93. Plaintiffs repeat the preceding allegations as though stated fully herein.

94. On or between September 5 and September 6, 2024, defendant Natanov changed the locks on the Premises and actually or constructively evicted plaintiffs Thornton and Alston from the Premises (the "Eviction").

95. Under the terms of the lease, Natanov was required to provide plaintiffs with 90 days notice in order to terminate the lease.

96. Under the terms of the lease, Natanov was permitted to enter the Premises for limited reasons but was required to provide plaintiffs with at least 24 hours notice before doing so.

97. At no time did Natanov provide any notice to plaintiffs Thornton and Alston that he intended to terminate the lease.

98. At no time did Natanov take any legal action against plaintiffs Thornton and Alston on any grounds, and certainly he never commenced an eviction action or complained that the rent was unpaid.

99. Rather, on September 5 or 6, 2024, acting without notice and in direct breach of the written contract between the parties, Natanov entered the Premises without seeking or receiving the consent or authorization of Thornton or Alston. By so doing, Natanov breached the expresss terms of the parties' contract.

100. On September 5 or 6, 2024, without any notice of any sort, Natanov caused the locks to the Premises to be changed and locked plaintiffs Thornton and Alston out of the Premises. By so doing, Natanov again breached the express terms of the parties' contract.

101. By virtue of these breaches, Natanov is liable to Thornton and Alston for breach of contract, which has denied Thornton and Alston access to the Premises and their property, and thereby inflicted serious and lasting economic damage to their businesses.

**SIXTH CAUSE OF ACTION**

(State Law Claim by Plaintiffs Thornton and Alston
for Conversion by Defendant Natanov)

102. Plaintiffs repeat the preceding allegations as though stated fully herein.

103. Upon information and belief, defendant Natanov either personally

15

removed the plaintiffs' property from the Premises or deliberately caused the property to be removed.

104. By removing Thornton and Alston's property from the Premises, and then locking them out of the Premises, Natanov caused these plaintiffs to suffer immediate economic harm.

105. Natanov's actions in seizing, appropriating, or otherwise taking plaintiffs' property were intentional and knowing, and were carried out in wanton disregard for the plaintiffs' rights and the damages and harms that resulted.

106. By virtue of his actions, Natanov has interfered with and eliminated Thornton and Alston's dominion over, right to, and possession of their property, and is thereby liable to Thornton and Alston for conversion.

## SEVENTH CAUSE OF ACTION

(State Law Claim by Plaintiffs Thornton and Alston
for Actual and Constructive Eviction by Defendant Natanov)

107. Plaintiffs repeat the preceding allegations as though stated fully herein.

108. By removing and taking possession of Thornton and Alston's property, and then locking the two plaintiffs out of the Premises and denying them access to either the leased space or their property, Natanov has actually and/or constructively evicted Thornton and Alston from the Premises.

109. Natanov's actions in actually or constructively evicting Thornton and Alston were intentional and knowing, and carried out in wanton disregard for the plaintiffs' rights and the damages and harms he was causing them to suffer.

## EIGHTH CAUSE OF ACTION

(New York City Administrative Code §8-801 et seq. by all
Plaintiffs Against the City of New York and Defendant Goris)

110. Plaintiffs repeat the preceding allegations as though stated fully herein.

111. Defendant Goris is liable under New York City Administrative Code (§8-801 et seq.) for causing each plaintiff to be falsely arrested and maliciously prosecuted.

112. To the extent that any one of the individual defendants did not personally engage in any of the aforementioned conduct, they were aware that it was or would be happening, had ample opportunity to intervene to prevent it from occurring or continuing to occur, and failed to do so.

113. The City of New York, as the individual defendants' employer, is liable under §8-803 for the acts of its employees and agents, including these individual defendants.

114. By reason thereof, the municipal defendant and defendant Goris have violated New York City Administrative Code §8-801 et seq., and caused the plaintiffs to suffer emotional and physical injuries, mental anguish, and the deprivation of their liberty.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, the plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against the individual defendants and defendant City of New York as follows:

i. actual and punitive damages against the individual defendants in an amount to be determined at trial;

ii. actual damages in an amount to be determined at trial against the City of New York;

iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York City Administrative Code §8-805, and expenses and costs of the action against defendants City of New York, Goris, Olive, and the Doe defendants;

iv. attorney's fees and court costs pursuant to the express terms of the lease between Natanov and plaintiffs Thornton and Alston;

v. injunctive relief in the form of an order issued by this Court expressly restraining each defendant Jeffrey Goris from engaging in further conduct in violation of Administrative Code §8-802, as required under New York City Administrative Code §8-805(a)(3); and,

vi. such other relief as the Court deems just and proper.

Dated: New York, New York
June 20, 2025

LUMER LAW GROUP
Attorneys for Plaintiffs

_____
Michael Lumer, Esq.
14 Wall Street, Suite 4C
New York, New York 10005
(212) 566-5060